UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| POWER HOME SOLAR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-cv-00042 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SIGORA SOLAR, LLC, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Power Home Solar, LLC ("PHS") sued its competitor, Defendant Sigora Solar, LLC, and two of its former sales representatives, Defendants Raven Stephens and Brian Ventura (collectively, "Defendants"). PHS alleges that Defendants conspired together to breach Stephens's and Ventura's employment agreements, steal its trade secrets, and bring it competitive harm. Defendants moved to dismiss PHS's 12-count complaint under Federal Rule of Civil Procedure 12(b)(6).

But what began as a routine motion to dismiss has taken a potentially ominous turn. Anchoring PHS's lawsuit against Defendants is the core factual allegation that Stephens and Ventura violated their respective employment agreements with PHS when they left that company and started working for Sigora. Defendants allege—and they offer what appears to be credible evidence to back it up—that they never signed these employment agreements, and that the employment agreements PHS presented in this lawsuit are forgeries. These are incredibly serious allegations indicating, if Defendants are to be believed, that PHS may have perpetrated a fraud on this court. Fortunately, this is also the type of allegation that lends itself

1

to being substantiated (or not) through relatively limited discovery and an evidentiary hearing. Given the significance of these allegations generally, as well as the determinative effect of the potentially fraudulent (or valid) contracts on the pending litigation, the court will hold all other matters in abeyance pending completion of this inquiry.

## I. FACTUAL BACKGROUND

PHS is a company that sells solar-energy systems to homeowners and commercial businesses. (Compl. ¶ 10 [ECF No. 1-3].) Sigora is PHS's competitor in the renewable-energy business. (*Id.* ¶ 27.) PHS alleges that Sigora "induced" its former employees, Stephens and Ventura, to cease their employment with PHS and work for Sigora. (*Id.* ¶ 43.) PHS further alleges that Stephens and Ventura absconded with its trade secrets at Sigora's behest, and that Defendants are collectively using its information "in conducting renewable energy business." (*Id.* ¶¶ 54–56.) PHS also alleges that Stephens and Ventura are violating various provisions of employment agreements they signed while employed at PHS. (*Id.* ¶¶ 65–69.)

PHS brings 12 counts: (1) breach of contract against Stephens and Ventura; (2) aiding and abetting breach of restrictive covenants against Sigora; (3) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") against Defendants; (4) aiding and abetting misappropriation of trade secrets under the DTSA against Sigora; (5) misappropriation of trade secrets under Virginia's Uniform Trade Secrets Act ("VUTSA") against Defendants; (6) common-law unfair competition against Defendants; (7) civil conspiracy against Defendants; (8) tortious interference with contract against Sigora; (9) turnover of property and an accounting against Defendants; (10) unjust enrichment against Defendants; (11) a "motion" for preliminary and permanent injunctive relief; and (12) punitive

damages against Defendants under DTSA and VUTSA. (*Id.* ¶¶ 65–183.)

## II. PROCEDURAL BACKGROUND

In June 2020, PHS filed this lawsuit in Charlottesville Circuit Court against Defendants. (*See* ECF No. 19.) Defendants removed the case to this court and filed a motion to dismiss. (ECF Nos. 1, 9–10.) On October 6, 2020, Defendants also filed an answer and counterclaims. (ECF No. 36.) Defendants brought counterclaims alleging, *inter alia*, common-law forgery (Count I) and common-law fraud (Count II), as well as affirmative defenses of forgery, fraud, and fraud on the court. (*See id.*)

After the parties completed briefing for Defendants' motion to dismiss, and on the eve of the hearing, the court entered an order directing the parties to Section 13 of the employment agreement that Stephens and Ventura allegedly signed. (ECF No. 41.) The provision contains a forum-selection clause for "Michigan courts" and a choice-of-law clause for Michigan law. (*See* ECF No. 19 at 42.) Because the parties did not raise or submit any briefing on the forum-selection and choice-of-law clauses—and instead briefed all 12 substantive claims exclusively under Virginia law—the court directed the parties to "meet and confer regarding the implications of this provision on the pending motion to dismiss" and "advise the court of the parties' respective positions." (ECF No. 41.)

At the October 27, 2020, hearing on the motion to dismiss, the parties argued the motion under Virginia law. The court then directed the parties to file supplemental briefs regarding (1) the forum-selection and choice-of-law clauses; and (2) PHS's oral motion to convert Count II from "aiding and abetting breach of restrictive covenants" to "aiding and abetting a breach of fiduciary duty." The parties timely submitted their supplemental briefs.

(ECF Nos. 43, 49.) In its first supplemental brief, PHS argued that the Michigan choice-of-law clause applied and should govern "all transactions contemplated by the [employment agreements]." (ECF No. 43 at 2.) Defendants argued that PHS had waived the forum-selection and choice-of-law clauses by bringing suit under Virginia law and pressing those Virginia claims in the litigation.

In the interim, Defendants moved to stay discovery pending resolution of the motion to dismiss. (ECF Nos. 44–47.) PHS did not consent to the stay but did not oppose the motion. (*See* ECF No. 47 at 1–2.) The court granted Defendants' motion and stayed discovery pending the resolution of Defendants' motion to dismiss. (ECF No. 48.)

On November 24, 2020, the court entered an order finding that PHS had waived the forum-selection clause. (ECF No. 51 at 2–3.) The court's order further outlined Virginia's choice-of-law rules. (*Id.* at 4.) Because a court would not enforce a choice-of-law provision if the contract was fraudulently procured,[1] the court raised several "outstanding questions." (*Id.* at 4–5.) First, the court recognized that if Defendants' claims of forgery and/or fraud are true, then the court would, for purposes of the motion to dismiss, disregard the Michigan choice-of-law clause and apply Virginia law to consider the enforceability of the restrictive covenants. Second, the court noted that if the employment agreements are not forgeries or fraudulent, and the court applied Michigan law to the breach of contract claim, then "the court must determine whether Michigan law also applies to the other state-law claims." (*Id.* at 5.) The court ordered a second round of supplemental briefing to address these questions and noted

---

[1] *See PNC Bank, Nat'l Ass'n v. Dominion Energy Mgmt., Inc.*, No. 3:17cv311, 2018 WL 1768061, at *4 (E.D. Va. Apr. 12, 2018).

that "the court will inform the parties if a hearing is necessary on this matter." (*Id.* at 6.) The parties timely filed their second supplemental briefs. (ECF Nos. 53, 56.)

### III. ANALYSIS

#### A. Defendants' Allegations

The court treats allegations of forgery, abuse of the judicial process, and fraud on the court with the utmost seriousness. Defendants have raised significant allegations supported by numerous declarations in their second supplemental brief suggesting that the employment agreements at issue are forgeries. The court now turns to examine those allegations.

##### 1. Raven Stephens

Stephens worked for PHS from August 3, 2018 through February 17, 2020. (Compl. ¶ 44.)[2] PHS alleges that Stephens executed a "Restrictive Covenants and Invention Assignment Agreement" approximately eight months after she started working for PHS, on April 1, 2019. (*Id.* ¶ 29.) Upon review of Stephens's purported agreement attached to PHS's Complaint as Exhibit B, the following is affixed on the bottom left corner of each page:

> Electronically signed by:
> *Raven Stephens* [*unintelligible text*]
> 4/1/2019 7:41:48 PM
> IP Address: 99.203.16.231

(ECF No. 19 at 39–43.) The underlined spaces in the agreement—presumably meant to be filled in with the employee's handwriting—are blank, and the agreement is neither signed in ink nor dated at the bottom. (*See id.*)

---

[2] This information was taken from PHS's Complaint. The employment dates contained in Stephens's declaration differ slightly. Stephens maintains that she worked for PHS from August 3, 2018 to February 14, 2020. (Decl. of Raven Stephens ¶ 2, Dec. 7, 2020 [ECF No. 53-3].)

5

Defendants submitted a declaration from Muhammad Naveed, a computer-science professional who has expertise in "network security, which encompasses Transmission Control Protocol/Internet Protocol (TCP/IP)." (Decl. of Muhammad Naveed ¶¶ 1–5, Dec. 7, 2020 [ECF No. 53-7].) Naveed's declaration outlines that while IP addresses "cannot be used to identify the individual using a device," they "generally can be used to track down a geographical location of a device or a network, although their accuracy is a significant issue." (*Id.* ¶¶ 6–7.) Naveed reviewed the IP address affixed on Stephens's alleged employment agreement and determined "based on the most accurate available source . . . that the IP address most likely tracks to Elkridge, Maryland." (*Id.* ¶ 8.) Naveed also checked other sources, and "[n]one of those other reputable sources that associate geolocations with IP addresses track[ed] to a location within 75 miles of Charlottesville, Virginia." (*Id.* ¶ 9.) Finally, Naveed determined that Stephens's purported electronic signature is not a "digital signature," which is the "'gold standard' in the electronic document signing sphere." (*Id.* ¶ 10.) Naveed noted that the failure to use a digital signature "significantly enhances the risks for electronic forgery and fraud." (*Id.* ¶ 12.)

In Stephens's declaration submitted with Defendants' second supplemental brief, she states that before being served with the Complaint in this matter, she had never seen, received, reviewed, or signed a copy of the employment agreement. (Stephens Decl. ¶¶ 6–7.) Stephens also declared, under penalty of perjury, that she was physically present in Charlottesville, Virginia on April 1, 2019 at 7:41 p.m., and did not visit Elkridge, Maryland on that date. (*Id.* ¶ 8.) Stephens further states that "at no time did [she] ever consent to be bound by the terms of this agreement, including by its Michigan choice of law provision." (*Id.* ¶ 9.)

2. Brian Ventura

Ventura worked for PHS from August 6, 2018 through April 30, 2019. (Compl. ¶ 50.) While PHS attached Stephens's purported employment agreement as an exhibit to the Complaint, PHS did not attach Ventura's agreement. Rather, PHS alleges that "[u]pon information and belief, in the ordinary course of his employment with PHS, Defendant Ventura signed a *similar* Agreement with PHS when he was employed by PHS on or about August 6, 2018." (*Id.* ¶ 36 (emphasis added).) To date, PHS has failed to produce Ventura's employment agreement.

Ventura asserts in his declaration that he "never executed an agreement entitled 'Restrictive Covenants and Invention Assignment Agreement'" before or after starting his employment with PHS. (Decl. of Brian Ventura ¶ 5, Dec. 7, 2020 [ECF No. 53-2].) Moreover, PHS alleges—and Ventura admitted in his declaration—that Ventura signed a "Sales Commission Agreement" on August 2, 2018. (Compl. ¶ 37; ECF No. 19 at 44–47; Ventura Decl. ¶ 4.) The Sales Commission Agreement incorporates by reference an "attached EMPLOYEE CONFIDENTIALITY AND NON-DISCLOSURE/NON-SOLICITATION AGREEMENT."[3] (ECF No. 19 at 46.) The Sales Commission Agreement states that it "shall be governed by, and construed in accordance with, the laws of the state of VIRGINIA." (ECF No. 19 at 46.)

---

[3] Defendants correctly note that the title of this "incorporated" agreement is different from the title of the agreement Stephens allegedly signed, the "Restrictive Covenants and Invention Assignment Agreement." (*Compare* ECF No. 19 at 39 ("Restrictive Covenants and Invention Assignment Agreement"), *with id.* at 46 (Sales Commission Agreement incorporating the "Employee Confidentiality and Non-Disclosure/Non-Solicitation Agreement").) Ventura states that he also never executed a document entitled "Employee Confidentiality and Non-Disclosure/Non-Solicitation Agreement" at any time. (Ventura Decl. ¶ 5.)

### 3. North Carolina Litigation

Finally, a separate but related lawsuit is relevant to Defendants' allegations of fraud on this court.[4] In May 2020, PHS filed a practically identical action in North Carolina superior court against Sigora and four of its other former employees who left PHS to work for Sigora ("the North Carolina Action").[5] In that case, PHS brought a breach of contract claim against two of its former employees,[6] Ben Parrish and Harris Parker Schram. PHS alleges that Parrish and Schram signed the same employment agreements that Stephens and Ventura allegedly signed in this case. On the same day Defendants filed their answer and counterclaims in this case, the defendants in the North Carolina Action also filed their answer and counterclaims. (*See* Answer, *Power Home Solar, LLC v. Sigora Solar, LLC, et al.*, No. 2020-CvS-7165 (Mecklenburg N.C. Bus. Ct. Oct. 6, 2020) [ECF No. 53-1].) The defendants in the North Carolina Action also brought counterclaims for forgery and fraud, as well as affirmative defenses of forgery, fraud, and fraud on the court. (*See id.*) In short, *all* four former employees against whom PHS now brings breach of contract claims assert that PHS has forged their signatures on the employment agreements that form the basis for those claims.

Defendants also attached a declaration from Parrish and Schram to their second supplemental brief. Parrish's declaration demonstrates that the electronic signature on his purported employment agreement (attached to PHS's complaint in the North Carolina Action)

---

[4] *See* Fed. R. Evid. 201(b)(2) (noting that a court may take judicial notice of certain facts, such as court filings).

[5] Defendants attached the complaint in the North Carolina Action to their first supplemental brief. (*See* Complaint, *Power Home Solar, LLC v. Sigora Solar, LLC, et al.*, No. 2020-CvS-7165 (Mecklenburg N.C. Bus. Ct. May 18, 2020) [ECF No. 49-1].)

[6] PHS did not bring a breach of contract claim against the other two individual defendants in the North Carolina Action.

is practically identical to Stephens's electronic signature here. (*See* Decl. of Ben Parrish, ¶¶ 3, 5, Dec. 7, 2020 [ECF No. 53-5]; ECF No. 49-1 at 50–54.) While the IP address on Parrish's agreement is different than the one on Stephens's agreement, Parrish's agreement was electronically signed on the *same day* Stephens's agreement was signed, on April 1, 2019. (Parrish Decl. ¶ 5; ECF No. 49-1 at 50–54.) Further, while Stephens's agreement was signed at 7:41 p.m., Parrish's agreement was signed 31 minutes earlier, at 7:10 p.m. (Parrish Decl. ¶ 5; ECF No. 49-1 at 50–54.) Like Stephens, Parrish states that prior to seeing the agreement attached to the complaint, he had "never received, reviewed, or signed a copy of this document." (Parrish Decl. ¶ 4.)

PHS also attached Schram's purported employment agreement as an exhibit in the North Carolina Action. (ECF No. 49-1 at 44–48.) The electronic signature on that agreement indicates that it was signed on April 3, 2019—two days after Stephens's and Parrish's agreements were signed—at 4:19 p.m. (*Id.*; Decl. of Harris Parker Schram ¶ 5, Dec. 7, 2020 [ECF No. 53-6].) Like Stephens and Parrish, Schram states that prior to seeing the exhibit in the North Carolina Action, he had "never received, reviewed, or signed a copy of this document." (Schram Decl. ¶ 4.)

  **B.** **PHS's Response**

PHS's second supplemental brief states in a heading that the choice-of-law "provision is not the product of fraud," but then goes on the argue that Defendants' fraud argument "is inappropriate at this time, as it seeks to ask this Court to make rulings and a judgment on a claim of the case before the validity of the Agreement has been adjudicated, and thus, falls outside of the scope of a [Rule] 12(b)(6) motion to dismiss." (ECF No. 56 at 2–3.) In other

words, PHS asks the court to ignore serious allegations of fraud for purposes of the motion to dismiss. The court declines to do so.

### C. The Need for Discovery and an Evidentiary Hearing

After reviewing these allegations, the court concludes that it is necessary to require expedited discovery into these allegations and ultimately hold an in-person evidentiary hearing to determine whether (1) Stephens's employment agreement is a forgery; and (2) Ventura's signed employment agreement exists (and if it does exist, whether it is a forgery). In other words, the court finds that an evidentiary hearing is essential to determine if PHS has perpetrated fraud on the court by initiating a lawsuit based on forged documents; whether a contractual relationship exists between the parties; whether that agreement controls this court's review of the legal claims; and if not, what the next appropriate step in this litigation is. The parties should be prepared to present all relevant witnesses, including the litigants in the North Carolina Action if necessary. PHS should also be prepared to produce Ventura's employment agreement, if it exists. *See* Fed. R. Evid. 1002, 1003.

The court finds that these allegations are so serious that they must take precedence over the resolution of the pending motion to dismiss. In any event, the court cannot decide threshold matters in the motion to dismiss without resolving these allegations of fraud. Contrary to PHS's argument, Defendants' allegations of fraud *do* have implications regarding the outcome of the motion to dismiss—*i.e.*, whether the court applies Michigan or Virginia law to one or more of the claims—and the court therefore cannot simply ignore these "facts" for purposes of the motion to dismiss.[7] Despite the importance of the motion to dismiss, the

---

[7] If the employment agreements are fraudulent, there are no Michigan choice-of-law provisions, and the court—

issue of whether the underlying basis of this lawsuit is fraudulent is more important and must be resolved with haste. The court will therefore hold the motion to dismiss in abeyance pending limited and targeted discovery and the evidentiary hearing. *See, e.g.*, *Parks v. Newmar Corp.*, No. 3:19cv352, 2019 WL 5298778, at *1 (E.D. Va. Oct. 18, 2019) (holding a motion to transfer venue in abeyance to hold an evidentiary hearing); *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 2011 WL 1225989, at *2 (E.D. Va. Mar. 29, 2011) (holding a three-day evidentiary hearing "[f]ollowing substantial discovery into the alteration of emails"). Other discovery—aside from discovery regarding the allegations of forgery/fraud—will remain stayed pending this matter's resolution.

The court also notes that if the employment agreements are forgeries, there will be a significant question of whether it will be appropriate to levy sanctions against PHS. "It is well-settled that fraud on the court or abuse of the judicial process warrants use of the inherent power to impose sanctions on the offending party or its counsel, or both." *Suntrust Mortg., Inc.*, 2011 WL 1225989, at *13 (citing supporting cases from the Supreme Court, and the First, Second, Third, Fifth, Seventh, Eighth, and Eleventh circuit courts of appeals regarding the use of the court's inherent power to impose sanctions).[8] Fraud on the court may result in dismissal of the case. *See Sprester v. Jones Motor Co.*, No. 5:05CV00021, 2006 WL 893642, at *1–2 (W.D. Va. Apr. 4, 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–51 (1991); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993)) (dismissing a matter with

---

if it did not dismiss the matter on separate grounds—would apply Virginia law to PHS's claims.

[8] The court urges counsel to read and carefully consider Judge Payne's persuasive opinion in *Suntrust* regarding the implications of perpetrating fraud on the court and abusing the judicial process.

11

prejudice and requiring the plaintiff to pay the defendants' fees and costs under its inherent power after finding that the plaintiff lied about her medical history); *Call v. Harrison*, No. 5:12CV00008, 2012 WL 5993732, at *6–10 (W.D. Va. Nov. 30, 2012) (dismissing a case with prejudice under the court's inherent power because the plaintiff lied about his prior medical treatment).

    **D.**    **Safety Precautions and Standing Order 2020-14**

The court also recognizes that the evidentiary hearing will take place during the COVID-19 pandemic and while the Second Amended Standing Order 2020-10 and 2020-14 is in place.[9] The standing order generally prohibits in-person hearings and jury trials in the Western District of Virginia through March 1, 2021. The order notes that "videoconference hearings should be held in most cases as they limit personal interaction and the potential spread of [COVID-19]." The order, however, gives discretion to the presiding judge to conduct hearings in person "should the exigencies of that case and the interests of justice so require." The court finds that the exigencies of this case and the interests of justice require a hearing before March 1, 2021. Not only is the potential of fraud on the court unquestionably important in and of itself, but it is also a threshold question that must be resolved to decide the motion to dismiss and move forward in this lawsuit.

The court will take every precaution possible to safely conduct the in-person evidentiary hearing. The court will require face coverings, temperature checks, social distancing inside and outside of the courtroom, and separate witness waiting rooms pending

---

[9] The standing order is accessible at the following url:
http://www.vawd.uscourts.gov/media/31973374/second-amended-standing-order-2020-10-and-2020-14.pdf.

their testimony. The court will also provide hand sanitizer and disinfecting wipes for any shared surfaces. Finally, the court will entertain any party's request to have a witness appear electronically on an individual basis.

### IV. CONCLUSION

In sum, it is necessary for the parties to conduct discovery regarding Defendants' allegations that the underlying employment agreements are forgeries and for the court to hold an evidentiary hearing on the matter. All other matters will be held in abeyance and discovery will remain stayed pending resolution of this matter.

The court is aware that the date of the hearing will depend on how much discovery (and what kind) the parties anticipate undertaking. Nevertheless, the court expects that the hearing will take place no later than Thursday, February 18, 2021. The parties are accordingly directed to meet and confer regarding how long they expect discovery to take, and then contact Magistrate Judge Joel Hoppe's chambers no later than Friday, December 18, 2020, to present an agreed discovery order or to schedule a hearing for the purpose of outlining the scope of discovery and establishing deadlines for its completion.[10] Following that hearing, Judge Hoppe will enter a discovery order consistent with this opinion and the court's desire to conduct the evidentiary hearing by Thursday, February 18, 2021. The court will also convene a telephonic status conference with the parties on Friday, January 15, 2021, at 3:00 p.m., to discuss the status of discovery, plans for the evidentiary hearing, and how long the parties expect the hearing to last.

---

[10] If Judge Hoppe approves the parties' agreed discovery plan and he determines that no hearing is necessary, he may enter the agreed discovery order without a hearing.

13

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 16th day of December, 2020.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE